UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH NIEVES, et al., | No. 2:22-cv-00270-DJC-AC |
| Plaintiffs, | |
| v. | ORDER |
| COUNTY OF TRINITY, et al., | |
| Defendants. | |

Plaintiffs Joseph Nieves and Emerald Acres Corporation bring the present action under 42 U.S.C. § 1983 alleging false arrest, false imprisonment, malicious prosecution, and failure to train/supervise, in addition to various state law claims. (Second Am. Compl. ("SAC") (ECF No. 40) at 24–66.) Before the Court is Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 42.)

Plaintiffs' March 9, 2023, Opposition to Defendants' Motion to Dismiss succinctly states the central issue of this case: "Was there probable cause for arrest?" (Opp'n (ECF No. 47) at 1.)[1]  For the reasons below, the Court finds there was probable cause, and accordingly GRANTS Defendants' Motion to Dismiss, with leave to amend.

///

---

[1] Plaintiffs have filed a duplicative Opposition to Defendants' Motion to Dismiss (ECF No. 48).  The Court will strike the duplicative opposition.

1

## I. Background

### A. Procedural History

Plaintiffs filed this suit on February 10, 2022. Defendants moved to dismiss Plaintiffs' claims on April 11, 2022. The parties stipulated to permit Plaintiffs to file a First Amended Complaint, which was filed on May 6, 2022. Defendants moved to dismiss Plaintiffs' First Amended Complaint on June 3, 2022, which was granted with leave to amend on December 29, 2022. Plaintiffs subsequently amended, filing their Second Amended Complaint on January 26, 2023.

The present motion by Defendants moves to dismiss all claims in Plaintiffs' Second Amended Complaint. (Defs.' Mot.) The matter is submitted without oral argument. (Order Reassigning Case (ECF No. 50).)

### B. Factual Background

Plaintiff Joseph Nieves operated a commercial cannabis company, Emerald Acres Corporation Emerald Acres, on his property in Hayfork, California ("Hayfork Property" or "the Property"). (SAC ¶¶ 23-25.) Richard Ortiz was employed by Emerald Acres Corporation, and occasionally stayed at the Hayfork Property, until Nieves terminated Ortiz's employment by phone on December 10, 2020. (*Id.* ¶¶ 32-33, 37.)

During the December 10, 2020, termination call, Ortiz became upset and told Nieves "I am going to shoo—." (*Id.* ¶ 37.) Ortiz did not complete the sentence, but Nieves believed that Ortiz had threatened to shoot him. (*Id.*) Nieves called the Trinity County Sheriff's Office ("the Sheriff's Office") to report the threat, and Deputy Benjamin Spencer was dispatched to the Hayfork Property. (*Id.* ¶ 39.) Nieves reiterated Ortiz's threat to Deputy Spencer. (*Id.* ¶ 40.) He also told Deputy Spencer that Ortiz had a mistaken belief that he was entitled to portion of the Property and was on his way to the Property to confront Nieves. (*Id.*) Deputy Spencer informed Nieves that he did not believe Ortiz's threat was immediate, and that the matter was a "civil issue" before leaving the Property. (*Id.* ¶¶ 44, 46.)

When Ortiz arrived at the Property 20 minutes after Deputy Spencer's departure, he jumped a locked gate and pounded on the windows of Nieves's truck. (*Id.* ¶ 47.) Nieves called the Sheriff's Office to report Ortiz trespassing, and Deputy Spencer was dispatched to the Property a second time. (*Id.* ¶¶ 48–49.) Deputy Spencer searched Ortiz and found a pocketknife on him, which he confiscated. (*Id.* ¶ 50.) Ortiz told Deputy Spencer that he was a partial owner of the Property, lived on the Property, and had personal items stored on the Property. (*Id.* ¶ 51.) Nieves rebutted Ortiz's claims, stating that he was the owner of the Property, and that Ortiz was not a resident. (*Id.* ¶ 54.) Deputy Spencer reiterated that the matter was a civil issue which needed to be resolved in civil court. (*Id.* ¶¶ 52, 56.)

On December 11, 2020, Ortiz called Deputy Spencer and asked him to perform a civil standby while Ortiz retrieved his personal items from the Property, which Deputy Spencer agreed to after first urging Ortiz to go through the courts instead. (*Id.* ¶¶ 66–67, 70.) Deputy Spencer spoke with his supervisor Sergeant Cavalli who advised that Ortiz would be considered a resident of the Property and that Nieves could not lock Ortiz off the property. (*Id.* ¶ 71.) When he arrived at the Hayfork Property, Deputy Spencer informed Nieves that Ortiz had a right to be on the property unless Nieves secured an eviction notice. (*Id.* ¶ 73.)

Upon Ortiz's arrival, the gate was still locked. Ortiz was agitated and told Deputy Spencer to cut the lock on the gate. (*Id.* ¶¶ 85, 89.) He also asked Deputy Spencer to "let them [(Nieves and Ortiz)] handle this like men." (*Id.* ¶ 92.) Deputy Spencer warned both Nieves and Ortiz that if they got physical, they would go to jail. (*Id.* ¶ 93.) Deputy Spencer then ordered Nieves to unlock the gate and Nieves acquiesced despite his objections that Ortiz was "irate." (*Id.* ¶¶ 97, 100.) Once the gate was unlocked, Ortiz ran to the residential area, and Deputy Spencer left the Property. (*Id.* ¶¶ 101–02.)

After Deputy Spencer had left, Nieves followed Ortiz to the residential area. (*Id.* ¶¶ 103–04.) Ortiz was acting aggressively toward others, threatening to burn the

3

cottage down and wrestling with Gabriel Hernandez. (*Id.* ¶ 103.) Nieves approached Ortiz telling him to calm down while Ortiz threatened to "beat" and "hurt" Nieves. (*See id.* ¶¶ 104–05.) Ortiz then reached down to his waistband at which time Nieves believed he saw a gun, although it does not appear that Ortiz was in fact armed. (*Id.* ¶ 105.) Nieves then shot Ortiz, resulting in a fatal injury. (*See id.* ¶¶ 105, 110.) Nieves called the Sheriff's Office to report the shooting, and Deputy Spencer was again dispatched to the Property. (*Id.* ¶¶ 106, 109.) Upon his arrival, Deputy Spencer asked "who shot him?" to which Nieves responded, "I did." (*Id.* ¶ 109.)

Nieves was arrested and charged with murder. (*Id.* ¶¶ 110–11.) A state court judge ultimately found that Nieves had acted in self-defense and dismissed the criminal complaint. (*Id.* ¶ 116.)

During Nieves's detention, the Sheriff's Office, the Trinity County Planning Department, and the California Department of Food and Agriculture inspected Nieves's property. (*Id.* ¶ 125.) Based on the inspection, the California Department of Food and Agriculture revoked Emerald Acres Corporation's provisional cannabis cultivation license, and the Trinity County Planning Department withdrew Emerald Acres Corporation's Trinity County cannabis license. (*Id.* ¶¶ 134–35.) A different state court judge later found that the California Department of Food and Agriculture could not revoke the license, instead requiring Plaintiff Nieves to pay a fee to restore the provisional license. (*Id.* ¶¶ 172–73.)

Plaintiffs Nieves and Emerald Acres Corporation brought this suit under 42 U.S.C. § 1983 alleging false arrest, false imprisonment, malicious prosecution, and failure to train/supervise, and ratification of procedures. (*See id.* ¶¶ 24–44.) In addition, Plaintiffs allege various state law claims. (*Id.* ¶ 45–66.)

///
///
///
///

## II. Legal Standard for Motion to Dismiss

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The motion may be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The Court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)). If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678. In the same vein, conclusory or formulaic recitations of elements do not alone suffice. *Id.* (citing *Twombly*, 550 U.S. at 555). This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

## III. Discussion

### A. False Arrest, False Imprisonment, and Malicious Prosecution

Plaintiffs' first three claims for false arrest, false imprisonment, and malicious prosecution require a showing that the officer did not have probable cause for arrest or prosecution. *See Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998) (false arrest and false imprisonment); *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019) (malicious prosecution). "Probable cause exists when there is a fair probability or substantial chance of criminal activity," *Lacey v. Maricopa County*,

5

693 F.3d 896, 918 (9th Cir. 2012), "based on reasonably trustworthy information that would warrant a belief by a reasonably prudent person that the person arrested has committed a criminal offense," *Franklin v. Fox*, 312 F.3d 423, 438 (9th Cir. 2002). Courts should "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *O'Doan v. Sanford*, 991 F.3d 1027, 1039 (9th Cir. 2021) (quoting *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)).

Based on the allegations in the Second Amended Complaint, there was probable cause to believe Nieves had committed a crime. Nieves readily admitted to shooting Ortiz,[2] (*see* SAC ¶ 109), and it was reasonable for Deputy Spencer to believe he had not done so in self-defense. It is significant that Nieves does not allege that he suffered from or exhibited any physical injuries, while Ortiz suffered a fatal injury. (*See id.* ¶ 110.) Moreover, while Plaintiff and other witnesses believed Ortiz might have been armed (*id.* ¶ 105), there is no allegation that Ortiz in fact had a weapon in his possession or that Deputy Spencer located any such weapon.

Further, Deputy Spencer had knowledge of the animosity between Nieves and Ortiz prior to the shooting: Nieves did not want Ortiz on the Property and had to be compelled to unlock the gate; and Ortiz had requested Deputy Spencer's presence at the Property while he removed his items. (*See id.* ¶¶ 40, 51, 66, 73, 76.) Just prior to the shooting, Deputy Spencer warned both Nieves and Ortiz that if they got physical, they would go to jail. (*See id.* ¶ 93.) Plaintiffs' characterization of Deputy Spencer's response to the shooting also indicates that Deputy Spencer believed either party could have escalated the conflict: "Deputy Spencer asked 'who shot him' – 'him' referring to either Nieves or Ortiz, since Spencer already knew, without needing to be

---

[2] Admissions carry an "indicia of credibility" strongly supporting a probable cause determination. *United States v. Harris*, 403 U.S. 573, 583 (1971); *see, e.g., Pallas v. Accornero*, No. 3:19-CV-01171-LB, 2019 WL 2359215, at *4 (N.D. Cal. June 3, 2019) (Plaintiff's admission that he headbutted the other party was sufficient to establish probable cause for arrest).

6

told, that one of these individuals was the victim." (*Id*. ¶ 109.) Even considering that Ortiz was being more aggressive than Nieves leading up to the shooting as alleged in the Complaint, Ortiz's alleged behavior was not so disproportionately antagonistic as to preclude Deputy Spencer from believing that Nieves was the aggressor, particularly in light of the fact that Nieves was unharmed, and Ortiz was apparently unarmed.

Plaintiffs argue that the probable cause was negated by Nieves's potential claim of self-defense, (*see* Opp'n at 6), but "[t]he mere existence of some evidence that could suggest self-defense does not negate probable cause." *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015). Plaintiffs do not allege that Nieves explicitly claimed self-defense at the time of his arrest; instead, they insist that Deputy Spencer should have known about the potential defense based on Ortiz's "irate behavior," the threat which Deputy Spencer had determined earlier was not immediate, and Ortiz's threats that Nieves would be sleeping outside. (*See* SAC ¶¶ 44, 91, 150 (s), (aa); Opp'n at 9.) In the Second Amended Complaint Plaintiffs allege additional facts which informed Nieves's actions including his knowledge that Ortiz owned guns and had shot people in the past, and that Ortiz wrestled with another individual on the Property. (*See* SAC ¶¶ 38, 103, 105.) However, probable cause "is based upon the totality of the circumstances *known to the officers* at the time," and Plaintiffs do not allege that Deputy Spencer was aware of these facts at the time of arrest. *See United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001) (emphasis added).

In similar cases where the plaintiff did not exhibit physical injury, courts found it was reasonable for the officers to conclude they were the aggressor. For instance, in *Yousefian*, the Ninth Circuit affirmed the district court's dismissal of a section 1983 false arrest and malicious prosecution case finding that the police had probable cause to arrest Yousefian. 779 F.3d at 1014. Yousefian had struck his elderly father-in-law in the head, resulting in a wound that was bleeding profusely. *Id*. at 1012. While Yousefian was the one who called law enforcement to the scene and claimed that he

1   was defending himself after his father-in-law started beating him with a cane,
2   Yousefian did not exhibit any injuries evidencing his claim.  The Ninth Circuit agreed
3   law enforcement had probable cause to arrest Yousefian.  *Id*. at 1014.
4          Similarly, in *Pallas v. Accornero*, No. 3:19-CV-01171-LB, 2019 WL 2975137 (N.D.
5   Cal. Aug. 22, 2019), a case with similar facts to the case at bar, the court dismissed the
6   section 1983 claims alleging malicious prosecution and wrongful arrest in which the
7   plaintiff also claimed self-defense.  *Id*. at *1.  There, the court found that law
8   enforcement had probable cause to arrest plaintiff after he head-butted an individual
9   (Gibson) who had pulled on the collar of his dog tightly to induce the dog to attack
10  the plaintiff and began to raise his hand toward the plaintiff's direction.  *Id*. at *2.  The
11  police dismissed plaintiff's claims of self-defense even though they were "informed by
12  the owner and the employees of the tavern that Gibson was the aggressor and
13  provoked the plaintiff, and that Gibson had been a troublemaker, acting violent in the
14  recent past inside the tavern with the owner."  *Id*. at *3.  The district court concluded
15  that the plaintiff's admission that he head-butted Gibson established probable cause,
16  and that "the mere existence of some evidence that could suggest self-defense does
17  not negate probable case."  *Id*. at 4 (quoting *Yousefian*, 779 F.3d at 1014)*; see also*
18  *Gainer v. City of Troutdale,* No. 3:14-CV-01346-SI, 2016 WL 107957, at *6 (D. Or. Jan.
19  8, 2016), *aff'd*, 715 F. App'x 649 (9th Cir. 2018) (same where the officer observed the
20  other party spitting blood and examined medical records showing a "severe facial
21  blow" while the plaintiff did not have any visible injuries).
22         The cases cited by Plaintiffs in support of their position demonstrate that a
23  higher showing of facts supporting self-defense is required to negate a probable
24  cause determination.  In *Stillwagon v. City of Delaware*, the plaintiff alleged sufficient
25  facts for the district court to infer that the arresting officers "conclusively knew" the
26  plaintiff acted in self-defense.  175 F. Supp. 3d. 874, 897–98 (S.D. Ohio 2016).  The
27  evidence in that case included Stillwagon's assertion that the other party (Mattingly)
28  had tried to kill him several times; security camera footage confirming that Mattingly

had attempted to ram Stillwagon with a truck, and that Stillwagon made no movement to pursue Mattingly; physical evidence that Stillwagon shot at the truck's tire and engine in an attempt to disable the truck; and knowledge that Mattingly had been under the influence of alcohol and had a serious criminal background. *Id.* at 885–87, 897–98.

Similarly, in *Navarro v. City of South Gate*, also cited by Nieves, the allegations included that a group of four "very intoxicated" individuals were severely injuring the plaintiff with bottles and pool sticks, and that he was attempting to defend himself and others in the bar by firing a shot into the ground to scare them away. 81 F. App'x 192, 194 (9th Cir. 2003). Additionally, it was not reasonable for the officers in that case to have based their probable cause determination on a witness statement that differed from others and had "changed . . . dramatically." *Id.*

These cases, in which the plaintiffs alleged that they were actively being attacked by the aggressor and used non-deadly force in defense, differ from the present case, in which Nieves, like the plaintiff in *Pallas*, "merely believed he was about to be attacked," and used deadly force. *See Pallas*, 2019 WL 2395137, at *10; (SAC ¶ 105.) The sole extrinsic evidence regarding the shooting itself that is cited in the Complaint is that "[w]itnesses confirmed that Ortiz was acting irate, and they believed he had a gun." (SAC ¶ 105.) When compared against the evidence in *Stillwagon* and *Navarro*, this is insufficient as a matter of law to negate a finding of probable cause.

While law enforcement cannot ignore exculpatory evidence in making a probable cause determination, "a law enforcement officer is not 'required by the Constitution to investigate independently every claim of innocence . . . .'" *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003) (quoting *Baker v. McCollan*, 443 U.S. 137, 145-46 (1979)); *see also Castro v. City of Union City*, No. 14-cv-00272-MEJ, 2016 WL 1569976, at *10 (N.D. Cal. Apr. 19, 2016) (the officer's failure to conduct a "more thorough" investigation into whether a trespasser was the initial attacker as Plaintiff

1 claimed did not negate the officer's finding of probable cause).  In *Navarro* the Ninth
2 Circuit distinguished between cases where "negation of self-defense is an element of
3 the offense" – thereby requiring greater investigation into potential exculpatory
4 evidence – and cases where self-defense is an affirmative defense with the burden of
5 proof on the charged party, as in the present case.  *See Navarro*, 81 Fed. Appx. at 195.
6 That a court ultimately found Nieves's self-defense claim meritorious does not in and
7 of itself compel a conclusion that probable cause was lacking.  Taking all of the
8 allegations in the complaint together, it is clear to the Court that Deputy Spencer had
9 probable cause to believe Nieves had committed a crime at the time he was arrested.
10    For the same reasons that support the legal conclusion that there was
11 probable cause for arrest, there was also probable cause for Defendants to prosecute
12 Plaintiff Nieves as a matter of law, at least on the facts currently alleged.  *See Conrad v.*
13 *United States*, 447 F.3d 760, 768 (9th Cir. 2006) ("When . . . the claim of malicious
14 prosecution is based upon the initiation of a criminal prosecution, the question of
15 probable cause is whether it was objectively reasonable for the defendant . . . to
16 suspect the plaintiff . . . had committed a crime." (quoting *Ecker v. Raging Waters*
17 *Group, Inc.*, 87 Cal. App. 4th 1320 1330 (2001))).
18    Because Deputy Spencer made a reasonable determination of probable cause,
19 Plaintiffs' false arrest, false imprisonment, and malicious prosecution claims are
20 likewise subject to dismissal.  *See Fayer v. Vaughn,* 649 F.3d 1061, 1065 (9th Cir.
21 2011) (affirming dismissal of claims at the pleading stage where "the facts in the
22 amended complaint show that [the plaintiff]'s arrest was supported by probable
23 cause").
24    Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' first
25 three causes of action.
26 ///
27 ///
28 ///

### B. Failure to Train, Supervise, and Ratification of Procedures

Plaintiffs' fourth cause of action – failure to train, supervise, and ratification of procedures – is also subject to dismissal because, based on the foregoing, Plaintiffs have not plead a constitutional violation necessary to establish *Monell* liability. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 691 (1978) (establishing supervisory or municipal liability for causing or contributing to the violation of constitutional rights). *Monell* claims require that plaintiff show "(1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [plaintiff]'s constitutional right; and (4) the policy was the moving force behind the constitutional violation." *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020). However, "[i]f a person has suffered no constitutional injury at the hands of the individual police officer" an inquiry into the Defendants' policies or training and supervision of its officers "is quite beside the point." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

As Plaintiffs have not established a constitutional injury in this case as a result of Defendants having probable cause to arrest and prosecute the Plaintiff, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' fourth cause of action.

### C. Qualified Immunity

Even if the Plaintiffs could establish that Deputy Spencer did not have probable cause, Defendants would be entitled to qualified immunity. "[T]he doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal quotations omitted). The test is (1) whether the officer violated the plaintiff's constitutional right, and (2) whether that right was "clearly established in light of the specific content of the case." *Mattos*, 661 F.3d at 440 (citation omitted).

As determined above, there was no violation of a constitutional right; but even if there was, the right would not have been "clearly established." "[A] probable cause determination 'necessarily turns upon the particular facts of the individual case . . . .'" *Gainer v. City of Troutdale*, No. 3:14-CV-01346-SI, 2016 WL 107957, at *5 (D. Or. Jan. 8, 2016), *aff'd*, 715 F. App'x 649 (9th Cir. 2018) (quoting *John v. City of El Monte*, 515 F.3d 936, 941 (9th Cir. 2008)). Because the facts of this case do not closely resemble an existing case finding no probable cause existed, Deputy Spencer would "not have known for certain that the conduct was unlawful." *Ziglar v. Abbasi*, 582 U.S. 120, 152 (2017).

Qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mueller v. Auker*, 576 F.3d 979, 992 (9th Cir. 2009) (emphasis in original) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Accordingly, even if Plaintiffs had established a constitutional violation, Defendants would be entitled to dismissal.

### D. Remaining State Law Claims

Plaintiffs' remaining claims arise under state law. The Court declines to exercise supplemental jurisdiction over these state law claims, and accordingly GRANTS Defendants' Motion to Dismiss all remaining claims. *See United Mine Works of Am. v. Gibbs*, 383 U.S. 715, 726 (1996) ("[I]f the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."); *see also* 28 U.S.C. § 1367(c)(3).

///
///
///
///
///
///
///

### IV. Conclusion

For the above reasons, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss is GRANTED with leave to amend. The Plaintiffs must file any amended complaint within thirty days of the entry of this order.

The Clerk of Court is directed to strike ECF No. 48 (*see supra* note 1).

IT IS SO ORDERED.

Dated: __May 12, 2023__

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC2 – nieves22cv00270.mtd